# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                  **Civ. No. 18-782**

$145.000.00 IN UNITED STATES CURRENCY,

    *Defendant-in-rem.*

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act and 18 U.S.C. § 1952 that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

### DEFENDANT *IN REM*

1. The defendant *in rem* consists of the following:

    i. One hundred Forty-Five thousand ($145.000.00) in United States Currency, (hereafter referred to as "Defendant Currency").

2. The Defendant Currency was seized by the Drug Enforcement Administration on April 13, 2018, in the District of New Mexico.

3. The Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

4. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

5. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

6. On April 13, 2018, Drug Enforcement Administration (DEA) Special Agent Perry reviewed an Amtrak Train Passenger Name Record (PNR). The PNR revealed that Luis Felipe Rivera and Ricardo Ortega purchased one-way travel from Chicago, Illinois to Los Angeles, California with a Visa Card in the name of Luis F. Rivera in the amount of $1,043.00. The PNR reflected travel in Amtrak sleeper car number 331, bedroom D, that was reserved on April 11, 2018 at 10:07 p.m. The train number three departed Chicago at 3:00 p.m. on April 13, 2018. The Amtrak Train ticket was purchased less than one day prior to departure.

7. On April 13, 2018, Agent Perry and Task Force Officer (TFO) Seth Chavez met the westbound Amtrak Train number three during its regularly scheduled stop in Albuquerque, New Mexico. Agent Perry and TFO Chavez boarded sleeper car number 331. Agent Perry walked to bedroom D. TFO Chavez remained down the hallway for observation of Agent Perry. Agent Perry stood to the left of the doorway, the sliding glass door was open and the curtain was partially open. Agent Perry observed two males, later identified as Ricardo Ortega-Chavez and Jose Felipe Rivera standing inside of bedroom D. Agent Perry displayed his DEA badge to Ortega-Chavez and Rivera and identified himself

as a police officer. Agent Perry asked for permission to speak with both Ortega-Chavez and Rivera, and they both granted permission.

8. Agent Perry asked Ortega-Chavez and Rivera for permission to open up the curtain and they both agreed. Agent Perry asked if they both spoke English, and they replied yes. Agent Perry asked for their tickets. Ortega-Chavez handed Agent Perry a paper ticket. Agent Perry asked Ortega-Chavez if they were brothers or cousins. Ortega-Chavez said, "Cousins." Agent Perry asked where they were traveling and Ortega-Chavez said, "Los Angeles." Agent Perry reviewed their train tickets and asked if they were traveling from Chicago and Ortega-Chavez said, "Yes."

9. Agent Perry asked Ortega-Chavez if he was from Chicago and Ortega-Chavez said, "No, I'm from El Paso, Texas." Agent Perry asked Rivera where he was from and Rivera said, "I'm from California." Agent Perry asked for permission to see their identification and both replied yes. Ortega-Chavez said that his was his first time on the train and that it was nice. Rivera handed Agent Perry his California identification. Agent Perrry reviewed the identification and immediately returned it to Rivera. Agent Perry asked for permission to step into their room and Ortega-Chavez said, "Yes." Rivera said, "Yeah." Ortega-Chavez handed Agent Perry a Texas identification card in the name of Ricardo Ortega-Chavez. Agent Perry asked Ortega-Chavez if he still lived in El Paso and Ortega-Chavez said that he lives in Chihuahua. Ortega-Chavez said that he owned a security company in Chihuahua and also in Sunland Park, New Mexico. Agent Perry reviewed Ortega-Chavez's identification and returned it. Rivera said that this was his first time traveling on the Amtrak Train.

10. Agent Perry asked Oretga-Chavez how long they were in Chicago. Ortega-Chavez said, "It was like for three days visiting, it was like for holiday you know." Agent Perry asked Ortega-Chavez how long he was in Chicago and Rivera said, "Me too." Agent Perry asked Ortega-Chavez if they traveled together or if they met in Chicago and Ortega-Chavez said that they met in Chicago. Ortega-

Chavez said that he traveled on an airplane from El Paso, Texas to Chicago. Rivera said that he also traveled on an airplane from California to Chicago.

11. Agent Perry explained to Ortega-Chavez and Rivera that Amtrak did not have much security. Agent Perry asked Ortega-Chavez and Rivera if they had any luggage with them and Ortega-Chavez and Rivera said that each of them had one bag downstairs. Agent Perry asked them if they had any luggage inside of their room and Ortega-Chavez said their backpacks and stuff. Agent Perry asked Ortega-Chavez if they had anything illegal with them and they both said no. Ortega-Chavez informed Agent Perry to check their bags. Agent Perry asked for and received permission from both Ortega-Chavez and Rivera to search their backpacks for contraband. Agent Perry observed two bundles of money wrapped in rubber-bands inside of Ortega-Chavez's backpack and two rubber-band wrapped bundles of money concealed inside of a neck pillow. Agent Perry knew from his experience that the rubber-band wrapped bundles of money were consistent with other bundles of money that Agent Perry had observed in the past which were involved in illegal drug trafficking.

12. Agent Perry searched Rivera's backpack which revealed a plastic bag with numerous rubber-band wrapped bundles of money inside of a plastic shopping type bag. Agent Perry observed other rubber-band wrapped bundles of money in the lining of Rivera's backpack and in a pair of shoes. Agent Perry searched a shopping bag that Ortega-Chavez claimed, which revealed a rubber-band wrapped bundle of money inside of a purse and a sunglass case. Ortega-Chavez said that all the money that he and Rivera had belonged to his company and that they had about $160,000.00. Ortega-Chavez said that they also had money inside of their suitcases that were downstairs. Ortega-Chavez said that they transported the money to Chicago to purchase drones and software for his security business. Ortega-Chavez said that they had the money separated for security reasons.

13. Agent Perry requested and received permission from Ortega-Chavez and Rivera to walk downstairs to the common luggage area to show Agent Perry their suitcases. Agent Perry asked for and received permission from both Ortega-Chavez and Rivera to search their luggage for contraband. Agent Perry searched both suitcases, which revealed large rubber-band wrapped bundles of money concealed in the inner lining of each suitcase. Ortega-Chavez said that they had stayed in a hotel in Chicago near the baseball stadium.

14. Ortega-Chavez said that the money was wired to him in Chicago, but that he decided to not purchase the drones or software when he was in Chicago. Agent Perry asked Ortega-Chavez and Rivera to hand their identification to TFO Chavez and each agreed. Ortega-Chavez said that he wrapped the money in various $5,000.00 bundles with rubber-bands because it was easier to manage. Ortega-Chavez said that the money was wired from the Bank of America in El Paso, Texas and that he was given to him by a client of his in Chicago. Ortega-Chavez said that he did not wish to provide Agent Perry the name or contact number of his client in Chicago. Ortega-Chavez said that his father was his "CO" for his company and was currently in San Diego. Ortega-Chavez said that he was given the money in cash form and that he wrapped it up in Chicago because it is less suspicious to do that.

15. Ortega-Chavez said that Rivera happened to be in Chicago as well and that he agreed to help transport the money for Ortega-Chavez. Agent Perry asked Ortega-Chavez to bring their suitcases up to their rooms and Ortega-Chavez agreed. Agent Perry, TFO Chavez, Ortega-Chavez and Rivera walked to bedroom D with the two suitcases. Agent Perry informed Ortega-Chavez that the various bundles of money that was located in various locations was being seized by Agent Perry and TFO Chavez as proceeds from illegal drugs.

16. Agent Perry obtained various photographs of the various bundles of money. Agent Perry and TFO Chavez placed the money into two different Self Sealed Evidence Envelopes (SSEE), in the

presence of Ortega-Chavez and Rivera. Agent Perry, TFO Chavez and Ortega-Chavez signed the top portion of the SSEEs prior to the SSEEs being sealed. TFO Chavez obtained photographs of Ortega-Chavez and Rivera, along with their identification. Agent Perry and TFO Chavez filled out a personal property receipt for the unknown amount of United States Currency and provided a copy to Ortega-Chavez. Agent Perry explained the process for Ortega-Chavez to file a claim for the money.

17. Agent Perry and TFO Chavez walked off of the Amtrak Train. Ortega-Chavez and Rivera continued their trip on the Amtrak Train. Agent Perry and TFO Chavez transported the bundled money to the DEA Albuquerque Office and placed it into a temporary storage vault.

18. On April 16, 2018, TFO Frank Chavez and TFO Davis removed the bundled money from the temporary storage vault. ASAC Riddle provided verbal permission to allow TFO Frank Chavez and TFO Clarence Davis to unseal the two SSEE's to obtain various photographs and to allow a drug odor detection canine to conduct a sniff.

19. At the DEA Albuquerque Office, TFO Franklin deployed his trained and certified drug detection canine on bundled money. TFO Franklin informed TFO F. Chavez that his narcotics canine had alerted positively to bundled money for the odor of illegal narcotics. TFO F. Chavez and TFO Davis transported the bundled money to Loomis, Incorporated for an official count. The bundled currency totalled $145,000 in U.S. currency.

### FIRST CLAIM FOR RELIEF

20. The United States incorporates by reference the allegations in paragraphs 1 through 19 as though fully set forth.

21. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all

proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

22. Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

23. The United States incorporates by reference the allegations in paragraphs 1 through 19 as though fully set forth.

24. Title 18, United States Code, Section 981(a)(1)(C) provides, in part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specific unlawful activity" (SUA) as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense.

25. 18 U.S.C. § 1952 prohibits interstate and foreign travel or transportation with the intent to (1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity. Unlawful activity is defined in 18 U.S.C. § 1952(b).

26. Defendant Currency is the proceeds of a violation of 18 U.S.C. § 1952 or is the proceeds traceable to such property and, is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*[signature]*

STEPHEN R. KOTZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 08-15-2018

Jarrell W. Perry, Special Agent
Drug Enforcement Administration

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
$145,000.00 IN UNITED STATES CURRENCY

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [X] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 195 Contract Product Liability | | | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 196 Franchise | [ ] 362 Personal Injury – Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | | | [ ] 790 Other Labor Litigation | | [ ] 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 8/16/2018
SIGNATURE OF ATTORNEY OF RECORD: /s/

**FOR OFFICE USE ONLY**